UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DENISE SHERRILLS, *Pro Se*, | ) | Case No.: 1:15 CV 1733 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| WELLS FARGO HOME MORTGAGE, | ) | |
| | ) | |
| Defendant | ) | ORDER |

On August 27, 2015, Plaintiff Denise Sherrills ("Plaintiff") filed a *Pro Se* Complaint against her former employer, Defendant Wells Fargo Home Mortgage ("Defendant"), alleging racial discrimination, retaliation, and gender discrimination. Currently pending before the court is Defendant's Motion to Dismiss (ECF No. 44) Plaintiff's Second Amended Complaint. Also pending before the court is Plaintiff's Unsigned Objection, which the court construes as a motion for relief under Federal Rule of Civil Procedure 60(b) ("Motion for Relief") (ECF No. 43). For the reasons stated herein, the court hereby denies Defendant's Motion to Dismiss (ECF No. 44), and it denies Plaintiff's Motion for Relief (ECF No. 43).

Plaintiff may renew her request for the appointment of counsel, if she wishes to do so, by September 14, 2017. In her motion, Plaintiff should explain why she believes that she is indigent as well as whether she has made any attempts to secure an attorney since her last motion. Defendant shall respond to Plaintiff's motion by September 21, 2017. Plaintiff shall file her reply, if any, by September 28, 2017.

# I. BACKGROUND

Plaintiff, an African-American female, was employed by Defendant's Independence, Ohio location from January 2013, until December 2013, where she worked as a Consumer Underwriter III reviewing and underwriting mortgage loans for potential borrowers. (Second Am. Compl. ¶¶ 2, 8, ECF No. 37.) Prior to her employment, Plaintiff attained a college degree, attained a Direct Endorsement Underwriter Certification, and amassed 20 years of banking experience. (*Id.* at ¶ 8.)

Plaintiff was required to take seven "test cases," along with every newly hired underwriter, in order to gain the "authority" to underwrite loans for Defendant's customers. (*Id.* at ¶¶ 9–14.) Defendant requires that authority candidates obtain passing scores on six out of seven of those test cases in order to gain their authority. (*Id.* at ¶ 14.) Defendant's Standard Operating Procedures Manual gives supervisors discretion to assign test cases to authority candidates, provides analysts with criteria with which they must score the tests, and gives lending officers the ability to override an authority candidate's failing score if they disagree with the analyst's decision. (*Id.* at ¶¶ 40–41; Suppl. Ex. 4, ECF No. 38-4.) No guidelines specify the number of tests an authority candidate must pass if she fails two or more of the seven initial tests. (Second Am. Compl. ¶ 14.)

Plaintiff alleges that Anmarie Stewart ("Stewart"), her lending officer, along with her team leader, the Vice President of LAS, and two analysts, conspired against her to prevent her from gaining her authority. (*Id.* at ¶ 22.) Plaintiff received "no pass" scores on at least two of her first seven test cases. (*Id.* at ¶¶ 12–13.) One additional test case was taken away from Plaintiff without explanation and was not included among her first seven tests. (*Id.*) Defendant provided additional test cases to her, but she received failing scores on an unspecified number of these tests as well. (*Id.* at ¶¶ 12–19.) Plaintiff alleges that several things prevented her from obtaining the necessary

number of passing test scores: one test was taken away from her and was not scored without explanation; Stewart provided her with incorrect information on one or more of the tests; Stewart "redid" one of her loans without her knowledge; one analyst manipulated information in the underwriting software; and one analyst gave her a failing score for "made up" reasons. (*Id.* at ¶¶ 13–24.) She appealed, or "escalated," each of her failing scores in order to get them overturned because she believed that she had performed well enough to receive passing scores. (*Id.* at ¶ 13.)

On March 8, 2013, Plaintiff met with her Site Manager, her Lending Officer, and her Team Supervisor. (*Id.*) During the meeting, Plaintiff explained that she believed she had passed the necessary number of tests, and she argued that one of her test cases should not have been taken away from her without being scored. (*Id.*) Further, she tried to persuade Stewart to override her failing scores. (*Id.*) Both the Site Manager and Stewart agreed that one of her tests should not have been taken away from her without being scored, but Stewart nevertheless stated that Plaintiff "was going to have to take the fall for this loan." (*Id.*) Plaintiff alleges that she "could feel and hear the racial tones of my mental being inferior." (*Id.*) In addition to her grievances, Plaintiff expressed her desire to "move into management" at some point in the near future. (*Id.*) Following the meeting, Stewart and Plaintiff's team supervisor gave Plaintiff unsettling looks and told Plaintiff in "harsh tones" that she was "not getting things." (*Id.*)

Plaintiff again met with the Site Manager, Stewart, and the Team Supervisor on March 28, 2013. (*Id.*) There, Plaintiff's supervisors informed her that her appeals were unsuccessful and that she was going to receive failing test scores for each of the escalated test cases. (*Id.*) Plaintiff alleges that these meetings were "unreasonable." (*Id.* at ¶¶ 46, 59.)

Also on March 28, 2013, the Site Manager told her that she should apply for a position as the Regional Processing Manager and that her failing test scores would not be a "deal breaker." (*Id.* at ¶¶ 13, 45.) Plaintiff alleges that she was denied this position and that she was not given an equal opportunity to advance her career. (Second Am. Compl. ¶¶ 43, 45.)

Furthermore, Plaintiff alleges that she was "subjected to racial stereotypical and derogatory comments," that she was "treated in a demeaning manner," and that Defendant's LAS team "disrespect[ed] [her] qualifications." (*Id.* at ¶¶ 46, 53.) She alleges that Defendant gave authority to less qualified Caucasian Consumer Underwriters I, II, and III, and she lists several of those employees by name. (*Id.* at ¶¶ 27, 29, 30, 50.) She also alleges that females received unequal pay and that Dan Mountcastle, a Caucasian male who was less experienced than her, was given a larger salary upon being hired as a Consumer Underwriter III. (*Id.* at ¶¶ 36, 50.) In addition, Plaintiff alleges that her mentor "made jokes about her body frame." (*Id.* at ¶ 12.)

On April 9, 2013, Plaintiff contacted Defendant's human resources department. (*Id.* at ¶ 26.) She stated that she was being "discriminated against and treated unfairly." (*Id.*) Plaintiff alleges that Defendant retaliated against her for communicating her grievances to the human resources department. (*Id.* at ¶ 57.) She alleges that her work conditions became "intolerable" and that she "was threatened with termination for voicing [her] opinion," and she again alleges that she was subjected to "racial stereotypical and derogatory comments." (*Id.* at ¶¶ 56, 57.)

On April 24, 2013, Plaintiff took medical leave for depression, anxiety, and headaches. (*Id.* at ¶¶ 26, 27, 36(e).) In or around May 2013, Plaintiff contacted the Equal Employment Opportunity Commission ("EEOC") and filed a discrimination charge. (*Id.* at ¶¶ 7, 26, 83.) From July 3, 2013, through September 18, 2013, Plaintiff was out of the workplace on short-term disability.

4

(*Id.* at ¶¶ 27, 37(e).)

Upon her return to work, on September 18, 2013, Plaintiff worked a part-time schedule. (*Id.* at ¶ 36(f).) At that time, a number of employees at Defendant's Independence office had already been laid off. (*Id.* at ¶¶ 36(f), (g).) Eventually, Plaintiff returned to a full-time schedule. (*Id.* at ¶ 36(f).) She was instructed that, in order to gain her authority, she was required to correctly calculate ten loans, but she was not given any further test cases or any other work. (*Id.*)

On October 16, 2013, a group of employees at Defendant's Independence office, including Plaintiff, were informed that they would be laid off as part of a reduction in force. (*Id.*) Defendant presented its employees with severance and release agreements, which provided that employees would receive severance pay but could not sue Defendant for their termination. (*Id.* at ¶ 36(g).) Plaintiff alleges that she has not received this severance pay. (*Id.*) She also alleges that she would not have been laid off if she had obtained her authority and attained the status of a Consumer Underwriter IV. (*Id.* at ¶¶ 38–39, 63.)

In 2013, Plaintiff filed suit against Defendant based on many of the same underlying facts as the present case (Plaintiff's "2013 Case"). Am. Compl., No. 1:13-CV-1809, ECF No. 1-1 Ex. A (N.D. Ohio 2013). She proceeded *pro se* and sought relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), alleging that Defendant intentionally discriminated against her on the basis of race and retaliated against her. *Id.* at ¶¶ 21–22. Defendant moved to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), arguing that she: (1) failed to exhaust her administrative remedies by not obtaining a right-to-sue letter from the EEOC; and (2) failed to state plausible claims for relief. Mot. to Dismiss, No. 1:13-CV-1809, ECF No. 10 (N.D. Ohio 2013). This court granted Defendant's Motion to Dismiss on both grounds.

5

Order, No. 1:13-CV-1809, ECF No. 12 (N.D. Ohio 2014).

In June 2015, Plaintiff obtained her right-to-sue letter from the EEOC. (First Am. Compl. ¶ 6, ECF No. 25.) On August 27, 2015, she filed the within action against Defendant. (Compl., ECF No. 1.) She again proceeded *pro se* and pled several claims for relief. (*See* Compl.) Plaintiff has twice amended her Complaint. (*See* First Am. Compl., ECF No. 25, Second Am. Compl., ECF No. 37.) Although Plaintiff's First Amended Complaint was not timely filed, the court gave Plaintiff latitude and treated the amendment as an amendment as of right. (*See* Order at 3, ECF No. 28). On January 11, 2016, Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Mot. Dismiss First Am. Compl., ECF No. 30.) Defendant argued that Plaintiff's discrimination claims were barred by the doctrine of res judicata and that they were not sufficiently pled. (*Id.*) On February 10, 2016, Plaintiff moved the court for leave to plead a Second Amended Complaint, which included additional factual allegation to support her discrimination claims as well as several additional claims for "mental and emotional distress," "intolerable work place," defamation, harassment, slander, and civil conspiracy. (Mot. Leave Plead Second Am. Compl., ECF No. 36.) That same day, Plaintiff filed a Supplement to her Motion for Leave to Plead her Second Amended Complaint, which included four exhibits. (Suppl. Exs. 1–4, ECF No. 38.)

On September 28, 2016, the court granted Plaintiff's Motion for Leave to Plead her Second Amended Complaint with respect to her discrimination claims. (Order, ECF No. 42.) The court explained that leave to amend was what "justice so require[d]" and that the amendments were not, as Defendant contended, futile, unduly delayed, or prejudicial. (*Id.* at 5–11.) Specifically, the court explained that Plaintiff's claims are not barred by the doctrine of res judicata and that the Second

Amended Complaint's additional facts could aid Plaintiff's claims. (*Id.* at 7–10.) However, the court denied Plaintiff's Motion with respect to her additional claims, and it denied Defendant's Motion to Dismiss Plaintiff's First Amended Complaint as moot. (*Id.* at 10–12.)

Plaintiff's Second Amended Complaint alleges, in relevant part, that Defendant: (1) violated Title VII by discriminating against Plaintiff on the basis of her race; (2) violated Title VII by retaliating against Plaintiff after she reported Defendant's alleged discrimination to both Defendant's human resources department and the EEOC; and (3) violated Ohio Revised Code § 4112.02 by discriminating against her on the basis of her gender. (Second Am. Compl. ¶¶ 65–84.)

On October 7, 2016, Plaintiff filed her Motion for Relief, which was styled as an "Unsigned Objection." (Obj., ECF No. 43.) In her Motion, Plaintiff requests that the court reconsider its September 28, 2016 Order, and argues that the court should have given her leave to plead her Second Amended Complaint in its entirety, including her additional claims. (Obj., ECF No. 43.)

On October 14, 2016, Defendant filed its Motion to Dismiss Plaintiff's Second Amended Complaint under Rule 12(b)(6), arguing that Plaintiff does not state plausible claims for relief. (Mot. Dismiss, ECF No. 44.) In addition, Defendant footnotes that it "incorporates its previous arguments presented in this case on res judicata and claim preclusion, and expressly reserves those issues for appeal."[1] (*Id.* at 3 n.1.) Plaintiff filed an Opposition to Defendant's Motion on October 28, 2016, in which she pointed to a number of exhibits to support her claims, some of which were included in her Supplement to her Second Amended Complaint and some of which are included elsewhere in

---

[1]     Additionally, Defendant argues that Plaintiff cannot assert a pattern or practice claim. (Mot. Dismiss 8–9, ECF No. 44.) Because Plaintiff omits the "pattern or practice" language from her Second Amended Complaint, the court will not address Defendant's argument here.

the record.  (Opp'n, ECF No. 45.)  In its Reply, which was filed on November 3, 2016, Defendant argues that the court should not consider these exhibits in support of Plaintiff's claims because Plaintiff has not properly incorporated them.  (Reply 1–4, ECF No. 46.)  On November 7, 2016, without moving the court for leave to file a sur-reply, Plaintiff filed a Brief in Support of her Opposition.  (Br. Supp. Opp'n, ECF No 47.)

## II. LEGAL STANDARD

The court examines the legal sufficiency of the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6).  *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993).  The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) clarified the law regarding what the plaintiff must plead in order to survive a Rule 12(b)(6) motion.

When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  Even though a Complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.*  A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court in *Iqbal*, 556 U.S. at 678, further explains the "plausibility" requirement, stating

that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The Sixth Circuit has held that a court may consider allegations contained in the Complaint, as well as exhibits attached to or otherwise incorporated in the Complaint, all without converting a Motion to Dismiss to a Motion for Summary Judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

### III. LAW AND ANALYSIS

The parties raise several issues in their briefing, which the court will address herein. First, in her Motion for Relief, Plaintiff requests relief from the court's September 28, 2016 Order, which denied her leave to plead additional claims for mental and emotional distress, intolerable workplace, defamation, harassment, slander, and civil conspiracy. Second, the parties dispute whether the court should consider Plaintiff's exhibits, many of which were not attached to her Second Amended Complaint. Third, the parties dispute whether Plaintiff sufficiently pled her claims for racial discrimination under Title VII, gender discrimination under Ohio Revised Code § 4112.02, and retaliation under Title VII.

### A. Plaintiff's Motion for Relief

Plaintiff moved this court for relief from its September 28, 2016 Order, arguing that the court should have permitted her to plead in her Second Amended Complaint additional claims for

emotional distress, intolerable workplace, defamation, harassment, slander, and civil conspiracy. (Obj., ECF No. 43, 1–3.) Defendant did not respond to Plaintiff's request in any of its briefing.

Though Plaintiff styles this document as an "Objection," the court construes it as a motion for relief from the court's previous Order, under Federal Rule of Civil Procedure 60(b). Rule 60(b) authorizes relief from a judgment or order in certain limited circumstances, including:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

The Sixth Circuit explains that "relief under Rule 60(b) is 'circumscribed by public policy favoring finality of judgments and termination of litigation.'" *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (quoting *Waifersong Ltd., Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)). Consequently, relief under Rule 60(b)(6) is warranted only in "unusual and extreme situations where principles of equity mandate relief," *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990), and the party seeking relief "bears the burden of establishing the grounds for such relief by clear and convincing evidence," *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008).

Here, Plaintiff has not presented the court with any arguments that meet any one of these demanding standards. She argues that the court "made a mistake" in its September 28, 2016 Order, when it explained that Plaintiff had not previously pled her additional claims as claims for relief. (Obj. 1.) She points out that, in her First Amended Complaint, she referenced her emotional distress as well as her intolerable working conditions. (*Id.*) However, the court considered these references

in its September 28, 2016 Order, and it found that they were not sufficient to give Defendant notice of the additional claims, that Plaintiff supported the additional claims with too few factual allegations, and that Plaintiff did not provide the court with any reasons why the additional claims should be considered in her Second Amended Complaint. (Order 10–11, ECF No. 42.)

Therefore, the court finds that Plaintiff has not carried her burden of establishing grounds for relief from the court's September 28, 2016 Order, and it denies Plaintiff's Motion for Relief.

### B. Plaintiff's Exhibits

Plaintiff references approximately 20 exhibits at various places in the record. She attached four exhibits to a Supplement to her Motion for Leave to Plead her Second Amended Complaint, including documents labeled Exhibits 1, 3, 9, and 13 (*see* Suppl. Exs. 1–4, ECF No. 38); she filed several exhibits in support of her Opposition to Defendant's Motion to Dismiss her Original Complaint (*see* Exs. 1–14, ECF No. 19); and she attached several exhibits to her Opposition to Defendant's Motion to Dismiss her First Amended Complaint (*see* Opp'n Mot. Dismiss First Am. Compl. Exs. 1–7, ECF No. 31). Defendant argues that the court should not consider any of these exhibits at this stage because Plaintiff did not properly incorporate the exhibits into her Second Amended Complaint. (Reply 2–3, ECF No. 46.)

In ruling on a Rule 12(b)(6) motion to dismiss, "[a] district court generally may only consider matters outside the pleadings if they treat the motion 'as one for summary judgment under Rule 56.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 405 (6th Cir. 2012) (quoting Fed. R. Civ. P. 12(d)). Rule 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Consequently, in addition to the specific allegations in the complaint, a court may consider "matters of public record, orders, items appearing

11

in the record of the case, *and exhibits attached to the complaint*." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

Accordingly, the court finds that it may properly consider the documents labeled Exhibits 1, 3, 9, and 13. These exhibits were filed the same day as the Second Amended Complaint, February 10, 2016; they were filed as a Supplement to the Second Amended Complaint; and they were referenced in and incorporated throughout the Second Amended Complaint (*see* Second Am. Compl. ¶¶ 28, 30, 36, 40, 64). Thus, the court may consider the documents labeled Exhibits 1, 3, 9, and 13 without running afoul of the Federal Rules. However, the court will not consider Plaintiff's remaining exhibits because they were not properly attached to or incorporated in the Second Amended Complaint and because the parties have not indicated that they wish to turn Defendant's Motion to Dismiss into a motion for summary judgment.

### C. Defendant's Motion to Dismiss

In its Motion to Dismiss, Defendant argues that Plaintiff's Second Amended Complaint should be dismissed under Rule 12(b)(6) because it is barred by the doctrine of res judicata and because her discrimination and retaliation do not meet the plausibility pleading standard. (Mot. Dismiss, ECF No. 44.) The court addresses each of these arguments in turn.

### 1. Res Judicata

Defendant footnotes that it "incorporates its previous arguments presented in this case on res judicata and claim preclusion." (Mot. Dismiss 3 n.1.) Previously, in its Motion to Dismiss Plaintiff's First Amended Complaint, Defendant argued that Plaintiff's claims were barred by res judicata because this court's Order dismissing Plaintiff's 2013 case constituted a prior final decision on the merits. (Mot. Dismiss First Am. Compl. 6–7, ECF No. 30.) According to Defendant,

Plaintiff's 2013 case involved the same parties and the same set of facts as the instant matter. (*Id.*)

The court previously rejected Defendant's argument in its September 28, 2016 Order. (Order 8–9, ECF No. 42.) Indeed, the Sixth Circuit plainly instructs that "when a district court's ruling rests on alternative grounds, at least one of which is based on the inability of the court to reach the merits, the judgment should not act as a bar in a future action." *Remus Joint Venture v. McAnally*, 116 F.3d 180, 184 n. 5 (6th Cir. 1997); *see also Pearson v. United Auto. Workers Local 140*, 99 F. App'x 46, 54–55 (6th Cir. 2004) (holding that there was no final decision on the merits where the district court previously dismissed the plaintiff's claim for a failure to exhaust his remedies and "went on to hold that even had [the plaintiff] exhausted his intra-union remedies, the union was entitled to summary judgment"). In its September 28, 2016 Order, the court reasoned that the Order dismissing Plaintiff's 2013 case did not constitute a final decision on the merits because the court's ruling rested on alternative grounds. (Order 9.) The cases Defendant cites in its Motion to Dismiss are not at odds with this principle and do not change the court's analysis here. *See Holder v. City of Cleveland*, 287 F. App'x 468, 471 (6th Cir. 2008); *Guzowski v. Hartman*, 849 F.2d 252, 254–55 (6th Cir. 1988). Thus, the court again holds that Plaintiff's claims are not barred by res judicata.

### 2. Plaintiff's Discrimination Claims

Defendant moves this court to dismiss Plaintiff's claims for race discrimination under Title VII and gender discrimination under Ohio Revised Code § 4112.02(A) for failure to state a claim under Rule 12(b)(6). (Mot. Dismiss 7–19, ECF No. 44.)

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of race. 42 U.S.C. §§ 2000e-2(a)(1).

13

In disparate treatment cases involving circumstantial evidence of discrimination, the framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981) requires the plaintiff to show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she met her legitimate job expectations; and (4) the employer treated her differently than similarly situated members of the unprotected class. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir. 1992).

Similarly, Ohio Revised Code § 4112.02(A) makes it unlawful for an employer "to discriminate against [any] person with respect to hire tenure, terms, conditions, or privileges of employment, or any other matter directly or indirectly related to employment" on the basis of that person's "race, color, religion, sex, military status, national origin, disability, age, or ancestry." The Ohio Supreme Court explains that "federal case law interpreting Title VII . . . is generally applicable to cases involving alleged violations of R.C. § 4412," *Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 471–72 (6th Cir. 2005) (quoting *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 196 (1981)), so courts also apply the *McDonnell Douglas* framework to claims under § 4112.02, *Braun v. Ultimate Jetcharters, Inc.*, No. 5:12CV1635, 2013 WL 623495, at *4, *6–8 (N.D. Ohio Feb. 19, 2013).

The Sixth Circuit explains that a plaintiff suffers an adverse employment action where the employer's action creates a "'materially adverse' change in the terms or conditions of employment." *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000) (quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). Courts find that "a materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material

14

responsibilities, or other indices that might be unique to a particular situation." *Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 662 (6th Cir. 1999) (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993)).

At the motion-to-dismiss stage, however, a plaintiff need not "plead facts establishing a prima facie case" but, rather, must only "allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that she was discriminated against in violation of Title VII. *Keys v. Humana, Inc.*, 684 F.3d 605, 609–10 (6th Cir. 2012) (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *Iqbal*, 556 U.S. at 678); *Graber v. Bittersweet, Inc.*, No. 3:13 CV 2672, 2014 WL 3670087, at *3 (N.D. Ohio July 22, 2014) ("Moreover, '[t]his circuit has continued to apply *Swierkiewicz*, and there is no reason to not do so' in regards to pleading in discrimination cases.") (quoting *Serrano v. Cintas Co.*, 699 F.3d 884, 897 (6th Cir. 2012)); *Braun*, No. 5:12CV1635, 2013 WL 623495, at *8 (applying *Swierkiewicz* to a gender discrimination claim under Ohio Revised Code § 4412.02).

### a. Race Discrimination

Defendant argues that Plaintiff does not allege sufficient facts to support her claim for race discrimination under Title VII because she does not satisfy the elements of her prima facie case. (Mot. Dismiss 9–14, ECF No. 44.) It argues that, although she is a member of a protected class, she does not allege that she suffered an adverse employment action, that she was qualified for her position, or that she was similarly situated to employees who received more favorable treatment. The court disagrees. Plaintiff need not establish her prima facie case prior to the discovery stage. Even so, Plaintiff pleads sufficient facts touching on each of the prima facie elements.

Though Plaintiff does not clearly lay out her theory of the case in either her Seconded

Amended Complaint or her briefing, her allegations sufficiently support her race discrimination claim under two theories of Defendant's adverse employment action.[2] First, Plaintiff alleges that she was laid off as part of a reduction in force. Courts recognize that employment termination as part of a reduction in force constitutes a materially adverse action under Title VII where there is evidence "tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) (citing *LaGrant v. Gulf and W. Mfg. Co.*, 748 F.2d 1087, 1090 (6th Cir. 1984)). Second, Plaintiff alleges that Defendant prevented her from passing the requisite number of tests to obtain her underwriting authority, which ultimately contributed to her loss of employment. While negative performance evaluations typically cannot stand alone to constitute an adverse employment action, courts have explained that an employee may suffer a materially adverse action where negative performance evaluations contribute to other adverse consequences. *McGinnis v. U.S. Air Force*, 266 F. Supp. 748, 762–63 (S.D. Ohio 2003) (quoting *Booker v. Budget Rent-A-Car*, 17 F. Supp. 2d 735, 751 (M.D. Tenn. 1998)). *But see Dowell v. Rubin*, No. 99-4184, 2000 WL 876767, at *2 (6th Cir. June 23, 2000); *Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999).

In her Second Amended Complaint, Plaintiff alleges that she passed the requisite number of test cases, but her team leader, her supervisors, and the analysts who scored her tests, nevertheless, conspired against her to prevent her from gaining her underwriting authority. She alleges that she

---

[2]     Defendant also argues that Plaintiff's allegations may suggest that Plaintiff is seeking to advance a claim under a failure-to-promote theory for failure to receive a management position. (Mot. Dismiss 12–13.) Though a failure to promote may amount to an adverse action, *Nguyen v. City of Cleveland*, 229 F.3d 559, 562–63 (6th Cir. 2000), the court need not address whether Plaintiff's allegations are sufficient to meet the requirements under a failure-to-promote claim. (*See* Second Am. Compl. Ex. 3, ECF No. 38-2).

was provided with incorrect testing information on at least one occasion and that the testing information was manipulated on another occasion; she alleges that Stewart, her supervisor, changed at least one of her loan calculations from a correct answer to an incorrect answer; she alleges that her supervisors refused to score one of her tests without explanation. Although Stewart acknowledged that Plaintiff had been treated unfairly on at least one occasion, she refused to exercise her discretion to override any of Plaintiff's failing scores. This conspiracy caused Plaintiff to fail at least two of her first seven tests, along with an unspecified number of additional tests. Further, Defendant did not give Plaintiff an opportunity to take any new tests when she returned to work in September 2013, after going on short-term disability leave. Plaintiff alleges that, if she had been able to obtain her authority, she would have attained a status as a Consumer Underwriter IV. Because she was not able to attain a status of a Consumer Underwriter IV, Defendant terminated her employment as part of its reduction in force in December 2013. *See Rachells v. Cingular Wireless*, 483 F. Supp. 2d 583, 586–87 (N.D. Ohio 2007) (denying a motion to dismiss where an African American employee received unfavorable performance reviews and was ultimately fired because of those reviews).[3]

In addition to the allegations concerning Defendant's adverse action, Plaintiff alleges that several less qualified, Caucasian underwriters named in her Second Amended Complaint were given a fair opportunity to gain their authority, that those Caucasian underwriters attained their status as Consumer Underwriters IV, and that those Caucasian underwriters, consequently, were not terminated as part of Defendant's reduction in force. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998) ("The plaintiff need not demonstrate an exact correlation with the

---

[3]     Though this case was decided prior to *Twombly* and *Iqbal*, courts in this circuit
        have made clear that the standard laid out in *Sweirkiewicz* is still controlling. *See
        Graber*, No. 3:13 CV 2672, 2014 WL 3670087, at *3.

employee receiving more favorable treatment in order for the two to be considered 'similarly-situated' . . . .") (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994), *abrogated on other grounds by Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133 (2000)). Plaintiff also alleges that Defendant's supervisors engaged in racial stereotyping, made racially derogatory comments toward her, and demeaned her because of her race. *See Keyes v. Wayne State Univ.*, No. 10-12087, 2010 WL 4054500, at *1, *3–7 (E.D. Mich. October 5, 2010).

Therefore, the court finds that sufficient factual content supports Plaintiff's race discrimination claim and, for that reason, denies Defendant's Motion to Dismiss this claim.

### b. Gender Discrimination

Defendant contends, as above, that Plaintiff's Second Amended Complaint does not sufficiently support her gender discrimination claim. (Mot. Dismiss 17–19, ECF No. 44.) Defendant argues that, "[w]hile [Plaintiff] belongs to a protected class as a female, her allegations fail to plausibly support the remaining elements of a prima facie case of gender discrimination." (*Id.* at 18.) The court, again, disagrees with Defendant.

Although Plaintiff's theory of the case is unclear, her Second Amended Complaint contains sufficient factual content upon which she can bring a claim for gender-based or sex-based wage discrimination. Courts recognize claims for gender-based wage discrimination under Ohio Revised Code § 4412.02(A). *Turner v. Grande Pointe Healthcare Cmty.*, 631 F. Supp. 2d 896, 911–12 (N.D. Ohio 2007). Here, Plaintiff alleges that Defendant paid its female employees less than its male employees. Plaintiff points to one male employee in particular, Dan Mountcastle ("Mountcastle"). (Second Am. Compl. ¶ 36, ECF No. 37.) She alleges that Mountcastle was hired at the same time as she and given the same position as she, Consumer Underwriter III. Plaintiff further alleges that,

although she had 20 years of banking experience, Mountcastle did not have any prior underwriting experience or skills. Despite this, Mountcastle was paid a larger salary, even after he was demoted to a Consumer Underwriter II. Also, Plaintiff alleges that her mentor commented and joked about her body frame. Courts in this circuit have held that allegations such as these, lean though they may be, are sufficient in a *pro se* complaint to plead a claim for wage-based gender discrimination. *See, e.g., Castle v. Sullivan Cty.*, No. 2:06-CV-138, 2008 WL 2887173, at *3–4 (E.D. Tenn. July 23, 2008) (denying motion to dismiss gender-based wage discrimination claim where the plaintiff alleged only that a male coworker, who held the same rank and position as she, was paid one level above her rate of pay).

Defendant emphasizes that Plaintiff has not alleged that she is similarly situated to any male employee in all respects. (Mot. Dismiss 18.) Defendant points out that Plaintiff's Second Amended Complaint alleges that Mountcastle attained his authority, while Plaintiff did not. Defendant also points out that the Second Amended Complaint does not specify whether Mountcastle fell under the same supervision as Plaintiff. However, Plaintiff alleges that Mountcastle received higher pay upon being hired, prior to attaining his underwriting authority, and prior to having any underwriting experience whatsoever. Defendant's point that Mountcastle eventually gained his authority does not explain away these discrepancies. Further, the Sixth Circuit warns that a plaintiff need not "demonstrate an exact correlation between himself and other similarly situated," *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012), and that "the 'same supervisor' criterium has never been read as an inflexible requirement," *Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 479 (6th Cir. 2003). Because these cautionary principles are particularly weighty at such an early stage of litigation, the court is not persuaded by Defendant's arguments here.

Thus, in light of the fact that Plaintiff is proceeding *pro se* and that Plaintiff has not yet conducted any discovery, the court finds that the allegations in Plaintiff's Second Amended Complaint are sufficient to state the essential elements of her gender discrimination claim.

### 3. Plaintiff's Retaliation Claim

Defendant next moves the court to dismiss Plaintiff's Title VII retaliation claim. (Mot. Dismiss 15–17, ECF No. 44.) Defendant argues that Plaintiff's Second Amended Complaint does not sufficiently allege any of the four prima facie elements. The court finds, however, that Plaintiff's Second Amended Complaint sufficiently alleges each of the four elements.

Title VII's anti-retaliation provision makes it unlawful for employers to discriminate against an employee because the employee "has opposed" an employment practice that is made unlawful by Title VII, or because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a). To establish a claim under either the "opposition" clause or the "participation" clause, a plaintiff must meet a "slightly modified" *McDonnell Douglas* test by showing that: (1) she engaged in a "protected activity" under Title VII; (2) the plaintiff's protected activity "was known" to the defendant; (3) the defendant "thereafter took an adverse employment action against Plaintiff, or Plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor"; and (4) a "causal connection" existed between the protected activity and the adverse action. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000) (citing *Morris v. Oldham Cty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000)). These elements are "similar but distinct from those of a discrimination claim." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). The Sixth Circuit explains that Plaintiff's burden in establishing her prima facie case for retaliation claims "is not onerous, but one easily met."

*Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

First, Plaintiff alleges that she engaged in two protected activities: she complained to Defendant's human resources department about what she believed was discriminatory treatment on April 9, 2013, and she filed a discrimination charge with the EEOC in or around May 2013. The Sixth Circuit has repeatedly held that each of these activities constitutes a protected activity under Title VII. *Trujilo v. Henniges Auto. Sealing Sys. N. Am., Inc.*, 495 F. App'x 651, 655 (6th Cir. Aug. 20, 2012) (string-citing cases for the proposition that a complaint to a defendant's human resources department is protected activity); *see Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542–43 (6th Cir. 2003) (explaining that Title VII "broadly protects" an employee's participation in EEOC investigations, proceedings, or hearings). Defendant argues that it is not clear from Plaintiff's Second Amended Complaint whether Plaintiff specifically complained about discrimination. (Mot. Dismiss 15.) This argument is unavailing. While Plaintiff's Second Amended Complaint is hardly an example of clarity, Plaintiff does make clear that the basis for her complaints was her belief that she was receiving "unfair treatment" and that she was being discriminated against. (*See* Second Am. Compl. ¶¶ 56, 57, 59, ECF No. 37.)

Second, Plaintiff adequately alleges that Defendant had knowledge of her protected activity. She alleges that she met with human resources personnel and several of Defendant's managers after she had filed her complaints, and she alleges that Defendant retaliated against her "for voicing her opinion." (*Id.* at ¶¶ 56, 59.) Though Plaintiff does not expressly say that Defendant knew that she was engaging in protected activity, her allegations are sufficient "factual content" from which the court can "draw the reasonable inference" that Defendant was aware of Plaintiff's complaints. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Third, Plaintiff's allegations support the conclusion that she suffered several materially adverse employment actions after she engaged in protected activity. In the retaliation context, a materially adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (citation omitted)). The Sixth Circuit explains that this standard is a "relatively low bar" and is "less onerous" than the standard applied in the discrimination context. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595–96 (6th Cir. 2007) (citing *Burlington N.*, 548 U.S. at 68).

Applying the case law in this circuit, the court finds that Plaintiff's Second Amended Complaint sufficiently alleges at least three adverse employment actions. Following her allegation that she was "retaliated against" for filing her EEOC charge (Second Am. Compl. ¶ 54), Plaintiff alleges that she was "threatened with termination for voicing her opinion" and was "threatened with reduction of position to Consumer Underwriter I" (*Id.* at ¶ 56). *Cf. Evergin v. City of Columbus*, No. 2:09-CV-1069, 2012 WL 12926047, at *10 (S.D. Ohio June 14, 2012) (explaining that threats constitute materially adverse action in retaliation context). Next, Plaintiff alleges that her working conditions became intolerable after she complained to human resources (Second Am. Compl. ¶ 57), that these intolerable conditions continued after she filed her EEOC charge (*Id.* at ¶¶ 59, 60), and that she was subject to racially derogatory and demeaning comments (*Id.* at ¶¶ 56, 59). *Cf. Morris*, 201 F.3d at 791–93 (explaining that retaliatory harassment can amount to a materially adverse employment action). Also, Plaintiff alleges that Defendant ultimately terminated her employment as part of a reduction in force. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461–62 (6th Cir. 2000) (explaining that termination of employment is a materially adverse employment action).

Fourth, Plaintiff's allegations contain sufficient causal connections between the protected activity and the adverse actions. The Sixth Circuit instructs that "[p]roof of temporal proximity between the protected activity and the adverse employment action, 'coupled with other indicia of retaliatory conduct,' may give rise to a finding of a causal connection." *Dixon v. Gonzales*, 481 F.3d 324, 333–34 (6th Cir. 2007) (quoting *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006)). While the exact timing of the events in Plaintiff's Second Amended Complaint is unclear, the court construes Plaintiff's allegations to mean that she suffered many of the adverse employment actions, as well as several indicia of retaliatory conduct, within just days after she contacted human resources on April 9, 2013. (*See* Second Am. Compl. ¶¶ 54–60, ECF No. 37.) By April 24, 2013, Plaintiff's working conditions had become intolerable, she had been threatened with termination or demotion, she had been subjected to racial stereotyping and racially derogatory comments, and she had been subjected to demeaning comments. *See Randolph*, 453 F.3d at 737 (holding that the plaintiff established a causal connection where she was placed on administrative leave within weeks of engaging in protected activity). In addition, Plaintiff alleges that she continued to suffer such retaliatory conduct after she filed the discrimination charge with the EEOC in May 2013. (*Id.* at ¶ 59.) Viewing the timing of the retaliation, coupled with the other indicia of retaliation, and construing the allegations in the light most favorable to Plaintiff, the court finds that Plaintiff sufficiently alleged a causal connection.

Defendant argues that there is too large a gap between Plaintiff's protected activity and her termination as part of a reduction in force to support an inference of a causal connection. (Mot. Dismiss 15 (citing *Jackson v. Baxter Int'l, Inc.*, No. 1:06CV2802, 2007 WL 4510258, at *4–6 (N.D. Ohio Dec. 18, 2007) (granting summary judgment to the defendant where there was a five-month

delay between the termination of employment and plaintiff's protected activity and where the plaintiff could not show "any additional indicia of retaliatory motive"))). Defendant is correct that the temporal proximity here is relatively lax. Plaintiff was not informed that she was being laid off until October 2013, so there was a six-month delay after Plaintiff's complaint to human resources and a five-month delay after her discrimination charge with the EEOC. However, Plaintiff alleged several additional indicia of a retaliatory motive, which help to close this gap. She alleges that she was on medical leave and short-term disability from April 24, 2013, until September 18, 2013. While on medical leave, Plaintiff's supervisor did not respond to her attempts to collect her paychecks and left her without an income. (Second Am. Compl. ¶ 62.) When Plaintiff returned from short-term disability leave, she was not given an opportunity to take test cases, to otherwise gain her authority, or to do any other work, which ultimately contributed to her loss of employment.

Therefore, Plaintiff's Second Amended Complaint sufficiently supports her retaliation claim.

## IV. CONCLUSION

For the reasons stated above, the court denies Defendant's Motion to Dismiss (ECF No. 44). The court also denies Plaintiff's Motion for Relief (ECF No. 43), after having construed her Unsigned Objection as a motion for relief under Federal Rule of Civil Procedure 60(b).

Plaintiff may renew her request for the appointment of counsel, if she wishes to do so, by September 14, 2017. In her motion, Plaintiff should explain why she believes that she is indigent

as well as whether she has made any attempts to secure an attorney since her last motion.  Defendant shall respond to Plaintiff's motion by September 21, 2017.  Plaintiff shall file her reply, if any, by September 28, 2017.

IT IS SO ORDERED.

/S/  SOLOMON  OLIVER,  JR.
UNITED STATES DISTRICT JUDGE

August 30, 2017